**FILED**
**JULY 7, 2026**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| TEAMSTERS LOCAL 839, | ) | |
| | ) | No. 40861-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BENTON COUNTY, WASHINGTON, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, C.J. — Benton County (County) appeals the trial court's order granting a motion to compel arbitration filed by Teamsters Local Union 839 and denying the County's competing motion to dismiss. The County argues that the trial court erred by ordering arbitration and more specifically by ordering the arbitrator to determine the preliminary question of whether Teamsters' grievance is subject to arbitration under the parties' collective bargaining agreement (CBA). The County contends that Teamsters' dispute involves a disciplinary action that is not subject to arbitration. Teamsters replies that the CBA is ambiguous and arbitration is the favored resolution under the law.

Although we conclude that the orders on appeal are not appealable as a matter of right, we grant the County's alternative motion for discretionary review. We further hold that the decisions being disputed by Teamsters are disciplinary actions and therefore

specifically excluded from arbitration under the parties' CBA. As such, the trial court erred in denying the County's motion for summary judgment and granting Teamsters' motion to compel arbitration.

We reverse and remand for further proceedings consistent with our decision.

BACKGROUND

Teamsters represents employees of Benton County that work in the sheriff's office. Teamsters and the County are parties to a CBA.

In February 2023, the County issued a disciplinary notice suspending a sheriff's office clerical employee for 24 hours without pay. Three months later, the employee was terminated. Teamsters initiated two disputes with the County on behalf of the employee: one for the suspension and one for the termination. In the disputes, Teamsters alleged the County violated two provisions of the CBA: section 9.5, which requires the County to treat employees fairly and uniformly; and section 25.5, which allows the County to discipline an employee for just cause.

The CBA provides a three-step resolution process for grievances: first, the grievance is presented in writing to the employee's immediate supervisor; second, if not resolved, the matter is escalated to the sheriff; and third, if still not resolved, the dispute is referred to final and binding arbitration.

For each of its disputes initiated on behalf of the clerical employee, Teamsters presented written grievances to the County. The County responded to each, denying the

grievances for multiple reasons. The County advised, in its denial letters, that "[t]he grievance challenges discipline" and "[a]ctions of a disciplinary nature may *not* be grieved by a Sheriff's Office employee pursuant to the controlling CBA, [section] 21.2." Clerk's Papers (CP) at 196.

Section 21.2 provides:

A grievance is defined as a dispute involving the interpretation, application or alleged violation of any provision of this Agreement, except for actions of a disciplinary nature pursuant to the terms of this Agreement. All questions or issues involving disciplinary action will be subject only to the Civil Service Commission Rules and Regulations for Sheriff's Office employees. No disciplinary action may be grieved by a Sheriff's Office employee except through the Civil Service Commission Rules and Regulations.

CP at 146.

Unsatisfied with the County's responses, Teamsters notified the County that it was advancing each of the disputes to final and binding arbitration. The County refused to participate in selecting an arbitrator, reiterating its position that disciplinary actions can only be grieved through the civil service commission pursuant to section 21.2.

Teamsters subsequently filed a complaint to compel arbitration under the CBA in superior court. The parties agreed there was no dispute of material facts, and each filed a motion for summary judgment.

Teamsters argued that notwithstanding section 21.2, it was entitled to arbitration because it was challenging the disciplinary actions under section 9.5, which states that

3

"any complaint involving discrimination in the application of new or existing rules will be resolved through the grievance procedure." CP at 137. The County maintained its position that disciplinary actions are not grievances under the CBA and could only be disputed through the civil service commission.

The court held a hearing to determine whether Teamsters' disputes should be arbitrated. But the court did not decide that issue. Instead, it granted Teamsters' motion and compelled arbitration because it wanted the arbitrator to decide whether the disputes should be arbitrated:

> I think the appropriate thing is to send this case to arbitration. And, if the arbitrator decides this is not a case for arbitration, okay, you're done with that—with that part of it.
>
> And then, I don't know if, at that point, it's too late for any other claim to be made or any other procedures to be followed. I don't know and it's not for me to decide now.
>
> But I think that the appropriate thing is is [sic] to send it to arbitration and let an arbitrator decide what this contract means.

Rep. of Proc. at 17. The County filed a motion for reconsideration, arguing that the court failed its duty to determine the arbitrability of the disputes. Reconsideration was denied, and this appeal followed.

4

ANALYSIS

1. APPEALABILITY

As a preliminary matter, we address the appealability of the orders designated on appeal. The County filed a notice of appeal under RAP 2.2(a)(3), designating the superior court's order on cross-motions for summary judgment and the court's order on motion for reconsideration. The superior court orders compelled the parties to arbitrate the procedural and substantive merits of the disputes. We asked for supplemental briefing on whether the orders were appealable as a matter of right under RAP 2.2 or appropriate for discretionary review under RAP 2.3.

Washington's Rules of Appellate Procedure provide only two methods for seeking review of superior court decisions: "[r]eview as a matter of right, called 'appeal'" under RAP 2.2, and "[r]eview by permission of the reviewing court, called 'discretionary review'" under RAP 2.3. RAP 2.1(a). RAP 2.3(a) permits discretionary review of "any act of the superior court not appealable as a matter of right."

Generally, an order compelling arbitration is not appealable as a matter of right under RAP 2.2(a)(3), which provides that a party may appeal from "[a]ny written decision affecting a substantial right in a civil case that in effect determines the action and prevents a final judgment or discontinues the action." An order *denying* arbitration is immediately appealable under RAP 2.2(a)(3); whereas, an order *compelling* arbitration is not. *FutureSelect Portfolio Mgmt., Inc., v. Tremont Grp. Holdings, Inc.*, 190 Wn.2d 281,

288-89, 291, 413 P.3d 1 (2018). Here, the County appeals an order compelling arbitration. The order does not determine or discontinue the action. As such, the County is not entitled to review as a matter of right.

Alternatively, the County argues that we should grant discretionary review of the orders on appeal. RAP 2.3(b) establishes specific and stringent criteria reflecting the appellate system's "'plain and intentional bias against interlocutory review.'" *In re Dependency of N.G.*, 199 Wn.2d 588, 595, 510 P.3d 335 (2022) (quoting Geoffrey Crooks, *Discretionary Review of Trial Court Decisions Under the Washington Rules of Appellate Procedure*, 61 WASH L. REV. 1541, 1545, 1547 (1986)). Discretionary review may be accepted only in limited circumstances.

One such circumstance is when "[t]he superior court has committed an obvious error which would render further proceedings useless." RAP 2.3(b)(1). As we demonstrate below, this provision applies in this case. The superior court failed its clear duty to determine whether the CBA required arbitration of the parties' underlying dispute and instead delegated this decision to an arbitrator. It did so despite acknowledging that if the arbitration clause did not apply to the issue being raised, then Teamsters' claim would be untimely. We conclude that Teamsters' disputes are not subject to arbitration under the CBA. Thus, Teamsters' claim is untimely and further proceedings including arbitration would be useless. *See* Stephen J. Dwyer et al., *The Confusing Standards for*

*Discretionary Review in Washington and a Proposed Framework for Clarity*, 38 Seattle

U. L. REV. 91, 99 (2014).

2.   ARBITRABILITY OF DISPUTES

The County contends the trial court erred when it compelled arbitration because

the CBA requires disciplinary actions to be reviewed by the Benton County Civil Service

Commission.  Teamsters argues the relevant CBA provisions are inconsistent and

ambiguous, and, because arbitration is the favored resolution under the law, it was not

improper to compel arbitration.

A.  *Standard of Review and Legal Principles*

We review a court's ruling on a motion for summary judgment de novo.  *Yakima*

*County Law Enf't Officers Guild v. Yakima County*, 133 Wn. App. 281, 284-85, 135 P.3d

558 (2006).  Summary judgment is appropriate if there "is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law."  CR

56(c).

"The arbitrability of labor disputes . . . is controlled by federal law."  *Yakima*

*County Law Enf't Officers Guild*, 133 Wn. App. at 285.  The governing principles are

found in the "Steelworkers' Trilogy."  *See United Steelworkers v. Am. Mfg. Co.*, 363 U.S.

564, 80 S. Ct. 1343, 4 L. Ed. 2d 1403 (1960); *United Steelworkers v. Warrior & Gulf*

*Navigation Co.*, 363 U.S. 574, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960); *United*

*Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960).

Under this line of cases, "'[i]t is the court's duty to determine whether the parties have agreed to arbitrate a particular dispute.'" *Yakima County Law Enf't Officers Guild*, 133 Wn. App. at 285 (quoting *The Council of County & City Emps. v. Spokane County*, 32 Wn. App. 422, 424-25, 647 P.2d 1058 (1982)). CBAs are generally governed by the ordinary rules of contract law. *Retail Clerks Health & Welfare Tr. Funds v. Shopland Supermarket, Inc.*, 96 Wn.2d 939, 945-46, 640 P.2d 1051 (1982). The court does not examine the merits of the controversy; rather, it determines whether the dispute is of the type the parties agreed to arbitrate. *Yakima County Law Enf't Officers Guild*, 133 Wn. App. at 285. Arbitration should be ordered "unless it may be said with positive assurance the arbitration clause is not susceptible of *an* interpretation that covers the asserted dispute." *Council of County & City Emps.*, 32 Wn. App. at 425. Courts should resolve doubts in favor of arbitration. *Yakima County Law Enf't Officers Guild*, 133 Wn. App. at 285. All matters "upon which the parties disagree are presumed to be within the arbitration provisions unless negated expressly or by clear implication." *Council of County & City Emps.*, 32 Wn. App. at 425.

B. *The Parties' CBA*

The parties' contentions arise from articles 9, 21, and 25 of the CBA. Article 9, entitled "Employee Rights" provides in pertinent part:

> 9.5 <u>Work Rules</u>: Work rules and policies shall be uniformly applied. When existing work rules or policy procedures are changed or new rules or procedures established, an employee whose work assignment is affected will be notified at a reasonable time prior to the effective date. Employees shall comply with all existing reasonable rules that are not in conflict with the express terms of this Agreement, provided the rules are uniformly applied and uniformly enforced. *Any unresolved complaint as to the reasonableness of any new or existing rule, or any complaint involving discrimination in the application of new or existing rules will be resolved through the grievance procedure.*

CP at 137 (emphasis added).

Article 21 is titled "Grievance Procedure" and contains seven sections. In section 21.1, the parties agree to resolve grievances at the lowest level possible. Then, section 21.2 defines "grievance":

> 21.2 A grievance is defined as a dispute involving the interpretation, application or alleged violation of any provision of this Agreement, *except for actions of a disciplinary nature pursuant to the terms of this Agreement. All questions or issues involving disciplinary action will be subject only to* the Civil Service Commission Rules and Regulations for Sheriff's Office employees. *No disciplinary action may be grieved* by a Sheriff's Office employee *except through* the Civil Service Commission Rules and Regulations.

CP at 146 (emphasis added). Sections 21.3 through 21.6 discuss the procedures and timeliness of grievances. The final section, 21.7, describes the three-step grievance procedure. Step three of the grievance procedure provides that "[i]f the grievance has not

9

been resolved at Step 2, the aggrieved employee/Union or the Employer will refer the dispute to final and binding arbitration." CP at 147.

Finally, article 25 governs "Discipline and Disciplinary Procedures." CP at 151. Article 25 contains 10 sections, the first of which allows the sheriff to discipline a sheriff's office employee "for just cause inclusive of such events as may be deemed to be just cause as set forth in the Rules and Regulations of the Benton County Civil Service Commission." CP at 151. Sections 25.2 through 25.9 detail disciplinary measures including progressive discipline and suspension, investigation, notice, probationary period, and the employee's right to respond. The final section provides:

> 25.10 A Sheriff's Office employee will have the right to have a disciplinary action against them reviewed by the Benton County Civil Service Commission. The employee must make the request within ten (10) calendar days of the disciplinary action otherwise the disciplinary action will be final and binding. *The Sheriff's Office employee must file a written demand for an investigatory hearing regarding the disciplinary action through the Benton County Civil Service Commission,* and the matter will be handled in accordance with applicable procedures as contained in the Rules and Regulations of the Benton County Civil Service Commission (Sheriff's Office employees only).

CP at 152 (emphasis added).

### C. Application

Teamsters asserts the disputes arise from the County's violation of section 9.5 "Work Rules." That section indicates that complaints regarding the unreasonableness or

discriminatory application of work rules will be resolved through the grievance procedure. The grievance procedure is governed by article 21. As we noted above, section 21.2 defines a "grievance" as "a dispute involving the interpretation, application or alleged violation of any provision of this Agreement, *except for actions of a disciplinary nature pursuant to the terms of this Agreement*." CP at 146 (emphasis added). As such, an employee who claims a new work rule is unreasonable under section 9.5 has a grievance. Similarly, an employee who believes a rule is being enforced against them but not a co-worker has a grievance under section 9.5. In either of those hypothetical scenarios, the grievance would be subject to the three-step process in section 21.7 and ultimately arbitration. But a dispute involving disciplinary action is not a grievance under section 21.2. Instead, it is subject only to the rules and review of the commission.

In short, section 9.5 points to article 21 where section 21.2 creates a proverbial fork in the road. If the dispute is within the definition of "grievance," then the dispute continues to the three-step process in section 21.7; whereas, if the dispute is an issue involving disciplinary action, it is subject only to the civil service commission rules and regulations and must follow the procedure set forth in article 25.[1]

---

[1] Teamsters also asserts the dispute arises under section 25.5, covering "just cause." This is not favorable to Teamsters' position because article 25 concerns disciplinary procedures vis-à-vis the commission's rules and regulations.

Here, despite its claims to the contrary, Teamsters is grieving a disciplinary action. In its complaint, Teamsters asserts that "[i]t is the Union's position that the Union and/or an employee has a right to file and process a grievance related to discipline and/or a violation of the CBA under the grievance process in the CBA." CP at 5. Moreover, the relief requested in the Teamsters' complaint was to "arbitrate the suspension and termination grievances related to [the employee] under the CBA." CP at 6. The complaint does not allege unreasonable or discriminatory application of work rules and does not seek a remedy related to the County's application of section 9.5.

Nevertheless, Teamsters contends this case is nearly identical to *Yakima County Law Enforcement Officers Guild*, where the court examined a similar CBA, found inconsistency between sections that created ambiguity, and thereby compelled arbitration as is favored under the law. 133 Wn. App. 281. Although we agree the cases have similarities, the differences between the CBA in *Yakima County Law Enforcement Officers Guild* and the CBA here are dispositive.

In *Yakima County Law Enforcement Officers Guild*, the workers' guild disputed a deputy's termination, alleging various violations under the CBA. *Id*. at 284. The guild sued to compel arbitration after the county denied the guild's request to do so. *Id*. The trial court compelled arbitration, the county and guild cross-appealed, and this court affirmed. *Id*. at 283.

The *Yakima County Law Enforcement Officers Guild* CBA provided:

12

> A. Disciplinary action resulting in oral and/or written reprimand shall be reviewed through the grievance procedure set forth in Article 20 [that outlines the arbitration process].
>
> B. Disciplinary action resulting in suspension without pay, demotion, or discharge, shall be reviewed by the Yakima County Civil Service Commission.

*Id*. at 285-86. The court noted "[t]hese sections negate an arbitration right for disciplinary action resulting in discharge." *Id*. at 286.

However, the guild pointed to another provision: "Any employee who believes that he/she has a grievance arising out of the terms of this Agreement may personally, or through a representative, apply for relief under the provisions of this Article." *Id*. The same article also stated: "A grievance is defined as a dispute involving the interpretation, application or alleged violation of any provision of this Agreement." *Id*.

The court determined the subsections were inconsistent: "while [one section] negates the right to arbitrate discharge issues, [the other sections] grant arbitration for disputes involving the interpretation and application of the CBA such as the parties' dispute over the interpretation and application of the just cause and discharge provisions." *Id*. As such, the court held that "[g]iven the contractual ambiguity, we cannot say 'with positive assurance the arbitration clause is not susceptible of *an* interpretation that covers the asserted dispute.'" *Id.* (quoting *Council of County & City Emps.*, 32 Wn. App. at 425).

The key difference between *Yakima County Law Enforcement Officers Guild* and this case is the definition of "grievance." The *Yakima County Law Enforcement Officers Guild* CBA defined "grievance" broadly and without exception, whereas here, disciplinary actions are expressly excluded. Section 9.5 points to "the grievance procedure" that is governed by article 21. However, the three-step process explained in section 21.7 culminating in arbitration is also called "the grievance procedure." As such, Teamsters essentially argues that a dispute under section 9.5 creates a separate right to arbitration that bypasses the definition of "grievance" in section 21.2 and becomes subject to the three-step grievance procedure outlined in section 21.7.

Because article 21 and the three-step process to arbitration are both called grievance procedure, the CBA is susceptible to ambiguity. *See Syrovy v. Alpine Res., Inc.*, 68 Wn. App. 35, 40, 841 P.2d 1279 (1992). "An ambiguity in a contract is present if a term is reasonably capable of being understood in either of two or more senses." *Id.* However, "[a] contract provision is not ambiguous merely because the parties to the contract suggest opposing meanings." *GMAC v. Everett Chevrolet, Inc.*, 179 Wn. App. 126, 135, 317 P.3d 1074 (2014). And the "court will not read ambiguity into a contract" if reasonably avoidable. *Id.* "'If only one reasonable meaning can be ascribed to the [provision] when viewed in context, that meaning necessarily reflects the parties' intent.'" *Id.* (quoting *Martinez v. Miller Indus., Inc.*, 94 Wn. App. 935, 943, 974 P.2d 1261 (1999)).

Under the CBA in this case, disciplinary actions are expressly negated and thus are not grievances subject to arbitration. Instead, article 25 provides a separate process for disputing a disciplinary action in detail. As such, there is only one reasonable meaning, and the language is not ambiguous. Furthermore, interpreting section 9.5 to create a right to arbitration for disciplinary actions ignores and disrupts the otherwise harmonious provisions. *See Weyerhaeuser Co. v. Com. Union Ins. Co.*, 142 Wn.2d 654, 669-70, 15 P.3d 115 (2000) ("Our rules require interpreting the whole contract by giving it a 'fair, reasonable, and sensible construction. *Am. Nat'l Fire Ins. Co. v. B&L Trucking & Constr. Co.*, 134 Wn.2d 413, 427, 951 P.2d 250 (1998)).

Here, we can say with positive assurance that the CBA is not susceptible to an interpretation that favors arbitration of the disciplinary actions grieved by Teamsters on behalf of the clerical employee. Pursuant to section 21.2, such matters are not subject to grievance under the CBA but instead are subject to the civil service rules and regulations.

3. REQUEST FOR FEES

Both parties request fees on appeal in the event they prevail. Parties are required to devote a section of their briefs to a request for fees. RAP 18.1(b). The request must provide citation to authority and argument that such fees are warranted. *Nw. Wholesale, Inc. v. PAC Organic Fruit, LLC*, 183 Wn. App. 459, 492-93, 334 P.3d 63 (2014).

Here, Benton County prevailed. Although the County devotes a section in its opening brief requesting attorney fees, it does not explain the basis for its request.

15

Rather, it simply states that it is entitled to attorney fees under RAP 14.1, 14.2, 14.3, and 18.1. The County neither argues how attorney fees are awardable under these rules, nor does it cite a provision in the CBA or civil service rules that would permit such an award. "Mere inclusion of a request for fees and costs in the last line of the conclusion in a brief is not sufficient under RAP 18.1(b)." *Johnson v. The Cash Store*, 116 Wn. App. 833, 851, 68 P.3d 1099 (2003). Because the County fails to explain any basis for an award of attorney fees, we deny its request.

## CONCLUSION

After granting discretionary review, we conclude the trial court erred in granting Teamsters' motion for summary judgment and ordering arbitration. Similarly, the court erred in denying the County's motion to dismiss Teamsters' complaint.

We reverse the orders on summary judgment and remand to the superior court to enter orders conforming to this decision.

_____
Staab, C.J.

WE CONCUR:

_____
Hill, J.

_____
Lawrence-Berrey, J.

16